Sophia Goren Gold (SBN 307971)
**KALIEL GOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (SBN 278507)
**KALIEL GOLD PLLC**
1100 15th Street NW 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

*Counsel for Plaintiffs and Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIKA RAMOS, KIMBERLEY HENLEY, and JESSICA RAMIREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>EYEBUYDIRECT, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Erika Ramos, Kimberley Henley, and Jessica Ramirez ("Plaintiffs"), on behalf of the putative Class, by their undersigned counsel, and for their Class Action Complaint against Defendant EyeBuyDirect, Inc., allege as follows:

## PRELIMINARY STATEMENT

1.    This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant EyeBuyDirect, Inc.

("Defendant" or "EyeBuyDirect") arising from its deceptive and untruthful promises to provide "free shipping" on clothing merchandise orders placed on its website.

2.     When consumers browse products on EyeBuyDirect's website, EyeBuyDirect prominently advertises "Free Shipping" on purchases exceeding a certain amount. However, that marketing representation is false because EyeBuyDirect surreptitiously adds a so-called "Shipping Insurance" to every online order.

3.     The deceptive addition of the "Shipping Insurance" renders EyeBuyDirect's promise of FREE or a flat, low-cost shipping false.

4.     Thousands of EyeBuyDirect customers like Plaintiffs have been assessed hidden shipping charges for which they did not bargain.

5.     Consumers like Plaintiffs reasonably understand EyeBuyDirect's express FREE or flat, low-cost shipping representation to disclose the total additional cost they will pay to have their merchandise delivered.

6.     By unfairly obscuring its true shipping costs, EyeBuyDirect deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess "Shipping Insurance" in addition to a shipping charge—for the simple reason that ensuring a package's arrival is an inextricable aspect of "shipping."

7.     Plaintiffs seek damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay EyeBuyDirect's shipping costs.

## **PARTIES**

8.     Plaintiff Erika Ramos is a resident and a citizen of Santa Ana, California.

9.     Plaintiff Kimberley Henley is a resident and citizen of Maple Valley, Washington.

10.    Plaintiff Jessica Ramirez is a resident and citizen of Tifton, Georgia

11.    Defendant EyeBuyDirect is an online retailer for eyewear including prescription and nonprescription glasses headquartered in Austin, Texas.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

12. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

      a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

      b. at least one member of the proposed class is a citizen of a State other than California, § 1332(d)(2)(A); and

      c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.    EyeBuyDirect Prominently and Plainly Promises FREE SHIPPING or Flat, Low-Cost Shipping on Its Website**

14. EyeBuyDirect is an online-only retailer of prescription and nonprescription eyewear headquartered in Austin, Texas. It is a subsidiary of EssilorLuxoticca.

15. EyeBuyDirect prominently features FREE SHIPPING or (on other orders) flat, low-cost shipping promises on its website. Such representations are made throughout its website, including on the pages of the multi-step purchase.

16. Such representations never carry a disclaimer or other warning that FREE SHIPPING does not actually mean "free shipping."

17. In the Shopping Cart, which is the first page of the checkout screenflow, the customer is informed that orders over a certain amount are entitled to Free Shipping. The total price displayed reflects the same:

3



19.     On the second page of the checkout screenflow, after the consumer clicks the large beige "PROCEED TO CHECKOUT" button, the consumer is taken to another page where a "Shipping Insurance" fee that amounts to a portion of the transaction is automatically added without the consumer doing anything at all to add the fee.

4

CLASS ACTION COMPLAINT

20.    On the third page of the checkout flow, after the address is entered, consumers are presented with large options to select their shipping method. Below the shipping options, in a tiny toggle already checked, Shipping Protection is added. The Shipping Protection toggle is so tiny, and intentionally designed to go unnoticed by consumers:



21.    By the time the consumer enters the fourth page of the checkout flow, the Shipping Insurance cannot be removed from the cart. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the added "Shipping Insurance" charge is optional, because it is presented in the cart as mandatory:

///
///
///
///
///
///

CLASS ACTION COMPLAINT

22.     Thus, reasonable consumers believe they have no other choice but to pay the Shipping Insurance charge, which they were never previously informed of. This is a classic bait & switch.

**B.    EyeBuyDirect Omits and Conceals Material Facts About the Costs of Shipping**

23.     The "Shipping Insurance" is a disguised shipping charge, rendering EyeBuyDirect's promise to provide "Free Shipping" false.

24.     Reasonable consumers like Plaintiffs understand shipping to include reasonable accoutrements to effectuate that shipping, including that the package will reach its intended destination.

25.     In short, there is no insurance needed for the purchased item, separate and apart from the shipping, and EyeBuyDirect deceived consumers by stating otherwise.

26.     By assessing add-on fees for certain aspects of "shipping," EyeBuyDirect

CLASS ACTION COMPLAINT

renders its FREE SHIPPING or flat, low-cost shipping promises false.

27.    By unfairly obscuring its true shipping charges to consumers, EyeBuyDirect deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true shipping charges. Indeed, other major e-commerce sites in the U.S. do not assess a Shipping Insurance in addition to a shipping charge—for the simple reason that package delivery is an essential, inextricable aspect of "shipping."

30.    EyeBuyDirect does not inform consumers the true costs of shipping and it misrepresents its Shipping cost as FREE or low-price, when in fact those costs are actually higher.

31.    Moreover, the "Shipping Insurance" is never reasonably disclosed to consumers until it shows up as a line item in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that a Shipping Insurance will be imposed on their purchases.

32.    Many consumers do not notice that "Shipping Insurance" is being added to their order. Others believe that they have no choice but to pay this "Shipping Insurance". And others still notice the previously undisclosed "Shipping Insurance" but decide to go through with the purchase anyway unsure of how it can be removed from their cart after it was automatically added.  The deceptive checkout practice has done its job and diverted the sale to EyeBuyDirect.

33.    In any of these situations, the result is the same: a consumer who otherwise would have found a way to pay without paying the "Shipping Insurance", ends up paying the fee. Defendant profits; Plaintiffs and the class lose.

34.    This is a classic case of "Drip pricing". "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . .  because they figure that 'investing more time into searching for it will not be worthwhile.'" Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing'*, New York Times, available at

7

1  https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html

2  (quoting Professor David Friedman of Willamette University).

3      35.    By unfairly obscuring its charges to consumers, EyeBuyDirect deceives

4  consumers and gains an unfair upper hand on competitors that fairly disclose their true

5  charges.

6  **C.    EyeBuyDirect's Shipping Insurance is a Junk Fee That Violates Federal**

7  **Guidance and California law**

8      36.    EyeBuyDirect's Shipping Insurances are precisely the type of "Junk Fee"

9  that has come under government scrutiny in recent years:

10     Junk fees are fees that are mandatory but not transparently disclosed to
       consumers. Consumers are lured in with the promise of a low price, but
11     when they get to the register, they discover that price was never really
       available. Junk fees harm consumers and actively undermine competition
12     by making it impractical for consumers to compare prices, a linchpin of
       our economic system.
13

14  The White House, <u>The Price Isn't Right: How Junk Fees Cost Consumers and</u>

15  <u>Undermine Competition</u>, March 5, 2024, available at

16  https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-

17  how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

18     37.    As the Federal Trade Commission said recently in its effort to combat

19  Junk Fees:

20     [M]any consumers said that sellers often do not advertise the total amount
       they will have to pay, and disclose fees only after they are well into
21     completing the transaction. They also said that sellers often misrepresent
       or do not adequately disclose the nature or purpose of certain fees, leaving
22     consumers wondering what they are paying for or if they are getting
       anything at all for the fee charged.
23

24  Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule</u>

25  <u>would prohibit hidden and falsely advertised fees</u>, October 11, 2023, available at

26  https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-

27  junk-fees.

28     38.    In July of 2024, California expanded its Consumer Legal Remedies Act

CLASS ACTION COMPLAINT

("CLRA") was amended to make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. **California** Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

39.     In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf

40.     Defendant violates federal guidance by adding the Shipping Insurances as line items well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of these fees.

41.    What's worse, it is entirely unclear what "Shipping Insurance" even is, and whether consumers are getting any added benefit at all from the fee charged.

**D.    Plaintiff Ramos's Experience**

42.    Plaintiff Ramos used EyeBuyDirect to purchase a pair of glasses.

43.    When using the website, Plaintiff was repeatedly informed that she would get "FREE SHIPPING" as part of her purchase.

44.    However, Plaintiff Ramos' purchase included a $3.12 charge for "Shipping Insurance" that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

45.    Plaintiff Ramos would not have made the purchase if she had known the EyeBuyDirect shipping was not in fact FREE.

46.    If she had known the true cost of shipping, he would have chosen another method or merchant for ordering her glasses.

**E.    Plaintiff Henley's Experience**

47.    Plaintiff Henley used EyeBuyDirect to purchase a pair of glasses.

48.    When using the website, Plaintiff was repeatedly informed that she would get "FREE SHIPPING" as part of her purchase.

49.    However, Plaintiff Henley's purchase included a $0.98 charge for "Shipping Insurance" that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

50.    Plaintiff Henley would not have made the purchase if she had known the EyeBuyDirect shipping was not in fact FREE.

51.    If she had known the true cost of shipping, he would have chosen another method or merchant for ordering her glasses.

**F.    Plaintiff Ramirez's Experience**

52.    Plaintiff Ramirez used EyeBuyDirect to purchase a pair of glasses.

CLASS ACTION COMPLAINT

53.    When using the website, Plaintiff was repeatedly informed that she would get "FREE SHIPPING" as part of her purchase.

54.    However, Plaintiff Ramirez purchase included a $1.29 charge for "Shipping Insurance" that was automatically and surreptitiously added to his cart, that—for the reasons described above—in fact represented an additional shipping charge.

55.    Plaintiff Ramos would not have made the purchase if she had known the EyeBuyDirect shipping was not in fact FREE.

56.    If she had known the true cost of shipping, he would have chosen another method or merchant for ordering her glasses.

## CLASS ALLEGATIONS

57.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements:

> All consumers in who, within the applicable statute of limitations preceding the filing of this action to the date of class certification paid EyeBuyDirect a Shipping Insurance fee.

58.    Plaintiffs also brings this action on behalf of a Washington and Georgia Subclass.

59.    Excluded from the Class is Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

60.    **Numerosity**:  At this time, Plaintiffs do not know the exact size of the

11

Class; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

61. **Commonality**: There are questions of law or fact common to the Class, which include, but are not limited to the following:

    a.    Whether during the class period, Defendant deceptively represented its Shipping cost for orders on eyebuydirect.com and on the EyeBuyDirect app;

    b.    Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

    c.    Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

    d.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

    e.    Whether Plaintiffs and members of the Class were harmed by Defendant's misrepresentations;

    f.    Whether Plaintiffs and the Class have been damaged, and if so, the proper measure of damages; and

    g.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount of the shipping costs for orders on EyeBuyDirect.com.

62. **Typicality**: Like Plaintiffs, many other consumers ordered goods for shipping from EyeBuyDirect's website or mobile app, believing shipping to be the flat fee represented based on Defendant's representations. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and each Class member was injured by Defendant's false representations about the true nature of the shipping cost. Plaintiffs

and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiffs' claims and the claims of members of the Class emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

63. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

64. **The Proposed Class Satisfies Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiffs remain interested in ordering goods for shipping through EyeBuyDirect's website; there is no way for his to know when or if Defendant will cease deceptively misrepresenting the cost of shipping.

65. Specifically, Defendant should be ordered to cease from representing its shipping service as a flat fee and to disclose the true nature of its mark-ups.

66. Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

67. **The Proposed Class Satisfies the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

///

///

CLASS ACTION COMPLAINT

1

## CAUSES OF ACTION

2

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

3

4      68.    The preceding allegations are incorporated by reference.

5      69.    To the detriment of Plaintiffs and the Class, Defendant has been, and

6    continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

7      70.    Plaintiffs and the Class conferred a benefit on Defendant when they paid

8    Defendant the Shipping Insurances, which they did not agree to and could not

9    reasonably avoid.

10      71.    Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said

11    benefits, which under the circumstances, would be unjust to allow Defendant to retain.

12      72.    Defendant's unjust enrichment is traceable to, and resulted directly and

13    proximately from, the conduct alleged herein.

14      73.    Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully

15    obtained fees received by Defendant as a result of its inequitable conduct as more fully

16    stated herein.

17

### SECOND CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiffs and the Class)**

18

19

20      74.    Plaintiffs hereby incorporate by reference the preceding paragraphs.

21      75.    Defendant's conduct described herein violates the Unfair Competition

22    Law ("UCL"), codified at California Business and Professions Code section 17200, *et*

23    *seq*.

24      76.    The UCL prohibits, and provides civil remedies for, unfair competition.

25    Its purpose is to protect both consumers and competitors by promoting fair competition

26    in commercial markets for goods and services. In service of that purpose, the

27    Legislature framed the UCL's substantive provisions in broad, sweeping language.

28      77.    The UCL imposes strict liability. Plaintiffs need not prove that Defendant

14

1  intentionally or negligently engaged in unlawful, unfair, or fraudulent business
2  practices—but only that such practices occurred.

3      78.    A business act or practice is "unfair" under the UCL if it offends an
4  established public policy or is immoral, unethical, oppressive, unscrupulous, or
5  substantially injurious to consumers, and that unfairness is determined by weighing the
6  reasons, justifications, and motives of the practice against the gravity of the harm to
7  the alleged victims.

8      79.    A business act or practice is "fraudulent" under the UCL if it is likely to
9  deceive members of the public.

10      80.    A business act or practice is "unlawful" under the UCL if it violates any
11  other law or regulation.

12      81.    Defendant committed unfair and fraudulent business acts and practices in
13  violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly
14  misrepresenting its shipping practices, including by falsely advertising that it provides
15  "free shipping" on qualifying orders.

16      82.    Defendant's acts and practices offend an established public policy of
17  truthful advertising in the marketplace, and constitute immoral, unethical, oppressive,
18  and unscrupulous activities that are substantially injurious to consumers.

19      83.    The harm to Plaintiffs and the California Subclass outweighs the utility of
20  Defendant's practices. There were reasonably available alternatives to further
21  Defendant's legitimate business interests, other than the misleading and deceptive
22  conduct described herein.

23      84.    Defendant's conduct also constitutes an "unlawful" act under the UCL
24  because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California
25  Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

26      85.    Defendant's business practices have misled Plaintiffs and the proposed
27  California Subclass and, unless enjoined, will continue to mislead them in the future.

28      86.    Plaintiffs relied on Defendant's misrepresentations in making his

CLASS ACTION COMPLAINT

1    purchase.

2    87.    By falsely marketing its shipping fee practices, Defendant deceived

3    Plaintiffs and class members into making purchases they otherwise would not make.

4    88.    As a direct and proximate result of Defendant's unfair, fraudulent, and

5    unlawful practices, Plaintiffs and class members suffered and will continue to suffer

6    actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing

7    threat to Plaintiffs and California Subclass members that they will be deceived.

8    Plaintiffs desire to conduct further business with Defendant but cannot rely on

9    Defendant's representations unless an injunction is issued.

10    89.    As a result of its unfair, fraudulent, and unlawful conduct, Defendant has

11    been unjustly enriched and should be required to disgorge its unjust profits and make

12    restitution to Plaintiffs and California Subclass members pursuant to Cal. Bus. & Prof.

13    Code § 17203 and 17204.

14    90.    Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs

15    and the members of the California Subclass, on behalf of the general public, seek an

16    order of this Court enjoining Defendant from continuing to engage, use, or employ their

17    unfair, unlawful, and fraudulent practices.

18    91.    Plaintiffs have no adequate remedy at law in part because Defendant

19    continues to automatically add "Shipping Insurance" to all purchases. Plaintiffs

20    therefore seek an injunction on behalf of the general public to prevent Defendant from

21    continuing to engage in the deceptive and misleading practices described herein.

22                      **THIRD CLAIM FOR RELIEF**
                        **False and Misleading Advertising**
23                      **(Bus. & Prof. Code §§ 17500, et seq.)**
                        **(On Behalf of Plaintiffs and the Class)**
24

25    92.    Plaintiffs hereby incorporate by reference the preceding paragraphs if

26    fully restated here.

27    93.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

28    section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to

                                        16

dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

94.    Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

95.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

96.    Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiffs and the members of the California subclass, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

97.    Further, Plaintiffs request an order awarding Plaintiffs and class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

98.    Additionally, Plaintiffs and class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

99.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

100.   This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d).

1  Defendant's sale of merchandise to consumers were "transactions" within the meaning

2  of California Civil Code § 1761(e). The merchandise purchased by Plaintiffs and the

3  Class are "goods" within the meaning of California Civil Code § 1761(a).

4        101.   Defendant violated and continues to violate the CLRA by engaging in the

5  following practices proscribed by California Civil Code § 1770(a) in transactions with

6  Plaintiffs and the Class which were intended to result in, and did result in, the sale of

7  merchandise:

8          a.   "Misrepresenting the affiliation, connection, or association with, or

9              certification by, another" (a)(3);

10         b.   "Representing that goods or services have . . . characteristics . . .

11             that they do not have" (a)(5);

12         c.   "Advertising goods or services with intent not to sell them as

13             advertised" (a)(9);

14         d.   "Representing that a transaction confers or involves rights,

15             remedies, or obligations that it does not have or involve, or that are

16             prohibited by law" (a)(14)

17         e.   "Advertising that a product is being offered at a specific price plus

18             a specific percentage of that price unless (A) the total price is set

19             forth in the advertisement, which may include, but is not limited to,

20             shelf tags, displays, and media advertising, in a size larger than any

21             other price in that advertisement, and (B) the specific price plus a

22             specific percentage of that price represents a markup from the

23             seller's costs or from the wholesale price of the product" (a)(20);

24             and

25         f.   "Advertising, displaying, or offering a price for a good or service

26             that does not include all mandatory fees or charges" (a)(29).

27       102.   Specifically, EyeBuyDirect falsely advertised FREE or flat, low-cost

28 shipping price on its website, and then deceptively added a Shipping Insurance to all

1    orders.

2        103.   Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant

3    in writing by certified mail of the particular violations of §1770 of the CLRA and

4    demanded that it rectify the problems associated with the actions detailed above and

5    give notice to all affected consumers of Defendant's intent to act. If Defendant fails to

6    respond to Plaintiffs' letter or agree to rectify the problems associated with the actions

7    detailed above and give notice to all affected consumers within 30 days of the date of

8    written notice, as proscribed by §1782, Plaintiffs will move to amend his Complaint to

9    pursue claims for actual, punitive and statutory damages, as appropriate against

10   Defendant.  As to this cause of action, at this time, Plaintiffs seek only injunctive relief.

11       104.   Plaintiffs also seek public injunctive relief, as described above.

12                          **FIFTH CLAIM FOR RELIEF**
                   **Violation of Washington Consumer Protection Act**
13           **(On Behalf of Plaintiff Henley and the Washington Subclass)**

14

15       105.   The preceding allegations are incorporated by reference and re-alleged as

16   if fully set forth herein.

17       106.   Plaintiff Henley asserts this claim on behalf of herself and on behalf of the

18   Class who are Washington citizens and enjoy the protections of Unfair Business

19   Practices Act—Consumer Protection Act (CPA), RCW Chapter 19.86.

20       107.   Plaintiff Henley and members of the Class are "persons" within the

21   meaning of RCW 19.86.010(1).

22       108.   Plaintiff Henley is a "person" within the meaning of RCW 19.86.010(1).

23       109.   Defendant's common course of conduct alleged above is unfair and

24   deceptive and had, and continues to have, the capacity to deceive a substantial portion

25   of the public.

26       110.   Defendant's policies and practices are deceptive and unfair because

27   Defendant misleadingly and actively omits material facts and deceptively

28   misrepresents its free or flat rate shipping rates.

                                      19

111.    Defendant's conduct was deceptive. By failing to honestly disclose its true Shipping Insurance practices and policies to its customers, Defendant made affirmative misrepresentations and omissions of material fact, and thus, engaged in deceptive acts or practices.

112.    Defendant's conduct was also unfair. Defendant's practices of charging Shipping Insurance fees on transactions was and is likely to cause substantial injury to consumers. Consumers could not reasonably avoid these fees which were not outweighed by countervailing benefit.

113.    Defendant's common course of unfair and deceptive conduct occurred in trade or commerce and impact the public interest because Defendant is in the business of providing eyeglasses to tens of thousands of consumers in Washington. Thousands of Washingtonians have been and continue to be affected by Defendant's unfair and deceptive acts and practices.

114.    Defendant's common course of conduct caused injury to the business or property of Plaintiff and the Class.

115.    Plaintiff Henley and the Class have been damaged in amounts to be determined at trial and, under RCW 19.86.090, Plaintiff Henley and the Class are entitled to recover such damages, including interest thereon, as well as three times actual damages (up to $25,000.00), attorneys' fees and costs.

116.    Under RCW 19.86.090, Plaintiff Henley and the Class are also entitled to an order enjoining Columbia CU from engaging in the illegal acts and practices described above.

**SIXTH CLAIM FOR RELIEF**
**Violation of Georgia Fair Business Practices Act**
**O.C.G.A. Sections 10-1-390**
**(On Behalf of Plaintiff Ramirez and the Georgia Subclass)**

117.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

CLASS ACTION COMPLAINT

118.   Defendant has engaged  in  consumer transactions and consumer acts or practices in the conduct of trade or commerce within the state of Georgia as defined in O.C.G.A. §§ 10-1-392(a)(7), (10), and (28).

119.   Defendant misrepresented that Shipping was free or flat rate. Defendant's offers of free or flat rate shipping were reasonably relied upon by consumers in selecting a retailer for glasses. Had they known the actual costs of Shipping, Plaintiff Ramirez may not have participated in the transaction.

120.   Defendant's acts and practices violate O.C.G.A. § 10-1 -393(a), which prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in the conduct of trade or commerce.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

1.   Certifying the proposed Class;

2.   Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.   Declaring the Defendant has committed the violations of law alleged herein;

4.   Providing for any and all public injunctive relief the Court deems appropriate;

5.   Awarding statutory damages in the maximum amount for which the law provides;

6.   Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.   Providing for any and all equitable monetary relief the Court deems appropriate;

8.   Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

CLASS ACTION COMPLAINT

9.    Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

10.    Awarding pre- and post-judgment interest to the extent the law allows; and

11.    Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: December 5, 2024                Respectfully submitted,

KA

By:_____
Sophia G. Gold
Jeffrey D. Kaliel
Amanda J. Rosenberg

*Counsel for Plaintiffs and Proposed Cl*